UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
ANTOINETTE SMITH, FRED SANTOS, and    :
CHARLES TUCKER,                       :
                                      :        21cv3657 (DLC)
                     Plaintiffs,      :
                                      :        OPINION AND ORDER
          -v-                         :
                                      :
APPLE, INC.,                          :
                                      :
                     Defendant.       :
                                      :
------------------------------------- X

APPEARANCES:

For plaintiffs:
Spencer Sheegan
Sheegan & Associates, P.C.
60 Cuttermill Road
Ste 409
Great Neck, NY 11021

For defendant:
David John Fioccola
Adam James Hunt
Morrison & Foerster LLP (NYC)
250 West 55th Street
New York, NY 10019

DENISE COTE, District Judge:

     Plaintiffs Antoinette Smith, Fred Santos, and Charles

Tucker bring claims on behalf of two putative classes against

defendant Apple, Inc. ("Apple") for misleading consumers about

the extent of the Apple iPhone's resistance to water exposure.

Apple has moved to stay the case, or in the alternative, to

dismiss the complaint.  For the following reasons, the motion to dismiss is granted.

## Background

The following facts are derived from the second amended complaint ("SAC"), unless otherwise noted, and are assumed to be true for the purposes of this motion.  Apple is a California corporation, with its principal place of business in California. Apple manufactures, markets, and sells the iPhone smartphone. Recent models of the iPhone have been rated and marketed as resistant to water damage.  In particular, iPhone models beginning with the iPhone 7 have a water resistance rating of IP67 or IP68 according to standards set forth by the International Electrotechnical Commission.  These ratings indicate that the iPhones can withstand being submerged in fresh water of a temperature between 59°F and 95°F at a depth of up to one meter for up to 30 minutes.

Apple has marketed its iPhone's water-resistant properties. Apple's advertisements show the iPhone being splashed with and submerged in various liquids, including fresh water, ocean water, and beverages appearing to be coffee or tea.  Apple's advertisements also state that the iPhone 11 is "water resistant up to 2 m for 30 min."

2

Apple's user manuals and warranties, however, are less optimistic about the iPhone's durability when exposed to liquids. Apple's warranty disclaims coverage for damage caused by liquids. And Apple acknowledges that water resistance can decrease as the iPhone ages, especially when exposed to hot or pressurized water, or to liquids other than water.

Plaintiffs purchased iPhones that broke, and that Apple refused to fix on the ground that the iPhones had sustained damage from contact with liquids. Plaintiffs Antoinette Smith and Fred Santos are residents of New York, and purchased their iPhones in New York in late 2017. Smith's iPhone began to malfunction in early 2021 after it sustained contact with water. Santos's iPhone was damaged in late 2020 after exposure to mild splashing in the office. In both cases, the plaintiffs notified Apple about the damage their iPhones had received, but Apple refused to assist them.

Plaintiff Charles Tucker is a resident of South Carolina, and purchased an iPhone 11 for his daughter in February of 2020. The iPhone began to malfunction in January of 2021. Apple refused to cover the damage, however, claiming that it was caused by contact with liquids. Tucker denies that the iPhone ever sustained water damage.

Plaintiff Antoinette Smith brought this action against Apple on April 24, 2021.  Apple moved to stay the case or, in the alternative, dismiss the complaint on September 8.  The complaint was then amended on October 9, adding Fred Santos and Charles Tucker as plaintiffs.  Apple again moved to stay the case or, in the alternative, dismiss the first amended complaint ("FAC") on November 5, and the plaintiffs opposed the motion on December 4.  The motion became fully submitted on December 17.  On February 2, the Court ordered that the plaintiffs amend their complaint to include allegations establishing diversity jurisdiction if they could do so consistent with Fed. R. Civ. P. 11.  The plaintiffs submitted the Second Amended Complaint the same day, adding only allegations regarding the number of members in the SAC's purported classes.

The SAC asserts claims on behalf of the named plaintiffs, as well as two classes of purchasers who purchased iPhones in New York and South Carolina, respectively.  The plaintiffs allege that the classes comprise at least 100 members, and have suffered over $5 million in damages.  The plaintiffs request both monetary and injunctive relief.

This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA").  CAFA confers federal

jurisdiction over "certain class actions where: (1) the proposed class contains at least 100 members; (2) minimal diversity exists between the parties; and (3) the aggregate amount in controversy exceeds $5,000,000." Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 213 (2d Cir. 2013) (citation omitted). The SAC alleges that there are over 100 class members, and that the aggregate amount of the class members' claims exceeds $5,000,000. Additionally, Smith and Santos are residents of New York, and Tucker is a resident of South Carolina, while Apple is a California corporation with its headquarters in California. CAFA's diversity, numerosity, and amount-in-controversy requirements have therefore been satisfied.

## Discussion

The complaint brings causes of action against Apple for violation of the New York General Business Law ("GBL") and South Carolina Consumer Protection Code;[1] breach of contract; breach of express warranty, implied warranty of merchantability, and the Magnuson-Moss Warranty Act; fraud; negligent misrepresentation;

---

[1] In their opposition to the motion to dismiss, the plaintiffs clarify that they intended to bring a claim under the South Carolina Unfair Trade Practices Act, not the South Carolina Consumer Protection Code. Because the South Carolina claims are dismissed for lack of personal jurisdiction, the Court need not determine under which statute the South Carolina claims may be brought.

and unjust enrichment.  Apple has requested a stay pending the
resolution of similar claims against it in California.  If the
case is not stayed, Apple moves to dismiss the complaint for
failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),
to dismiss Tucker's claims due to lack of personal jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss the
plaintiffs' request for injunctive relief due to lack of
standing pursuant to Fed. R. Civ. P. 12(b)(1).

I.   Motion to Stay

Apple moves to stay the case under the Colorado River
doctrine, pending resolution of a similar lawsuit in California
state court over Apple's alleged exaggeration of the iPhone's
water resistance.  See Miguel v. Apple Inc., 21-cv-8341.
Apple's motion to stay is denied.

"[A]bstention is generally disfavored, and federal courts
have a 'virtually unflagging obligation' to exercise their
jurisdiction."  Niagara Mohawk Power Corp. v. Hudson River-Black
River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012)
("Niagara Mohawk") (quoting Colorado River Water Conservation
Dist. v. United States, 424 U.S. 800, 817 (1976) ("Colorado
River")).  "The abstention doctrine comprises a few
extraordinary and narrow exceptions to a federal court's duty to

exercise its jurisdiction, and in this analysis, the balance is
heavily weighted in favor of the exercise of jurisdiction."
Niagara Mohawk, 673 F.3d at 100 (citation omitted).

One of the exceptions to the exercise of federal
jurisdiction is Colorado River abstention.  This doctrine
permits abstention when "parallel state-court litigation could
result in comprehensive disposition of litigation and abstention
would conserve judicial resource."  Id. (citation omitted).
"Suits are parallel when substantially the same parties are
contemporaneously litigating substantially the same issue in
another forum."  Id. (citation omitted).  By contrast, suits are
not parallel when the parties involved in the cases differ, or
when the cases involve different claims arising from different
sources of law.  See Alliance of Am. Ins. v. Cuomo, 854 F.2d
591, 603 (2d Cir. 1988).

If the federal and state actions are parallel, Colorado
River requires a court to consider six factors:

> (1) whether the controversy involves a res over which
> one of the courts has assumed jurisdiction; (2)
> whether the federal forum is less inconvenient than
> the other for the parties; (3) whether staying or
> dismissing the federal action will avoid piecemeal
> litigation; (4) the order in which the actions were
> filed and whether proceedings have advanced more in
> one forum than in the other; (5) whether federal law
> provides the rule of decision; and (6) whether the

state procedures are adequate to protect the
plaintiff's federal rights.

Kaplan v. Reed Smith LLP, 919 F.3d 154, 158 (2d Cir. 2019)
(citation omitted).  "No single factor is necessarily decisive,
and the weight to be given to any one factor may vary greatly
from case to case, depending on the particular setting of the
case."  Id. (citation omitted).  Where a factor "is facially
neutral, that is a basis for retaining jurisdiction, not for
yielding it."  Id. (citation omitted).  In diversity actions,
where state law provides the rule of decision, the fifth factor
ordinarily carries "little weight."  Bethlehem Contracting Co.
v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986).

Abstention in this case is not warranted because this
action is not parallel to Miguel v. Apple.[2]  Both lawsuits
involve claims against Apple for overstating the ability of the
iPhone to resist damage from contact with liquid.  But the
Miguel action is brought by California plaintiffs, on behalf of
a California class, stating claims under California law.  This
case, on the other hand is brought by plaintiffs from New York

---

[2] The Court takes judicial notice of the complaint and other
filings in the Miguel action, which are matters of public
record.  See Mangiafico v. Blumenthal, 471 F.3d 391, 397-98 (2d
Cir. 2006).

and South Carolina, raising claims under the laws of each state, on behalf of classes of purchasers within each state.

Consideration of the six Colorado River factors also weighs against abstention. First, in neither action has either court been asked to assert jurisdiction over any res. Second, the federal forum is no less convenient for the parties than the state forum -- Apple is located within the jurisdiction of the California action, but many of the plaintiffs in this case reside in New York. Third, the risk of piecemeal litigation does not weigh in favor of abstention, as there are no overlapping state court claims and any conflict between different rulings can be handled by normal claim preclusion principles. See Woodford v. Cmty Action Agency, 239 F.3d 517, 524 (2d Cir. 2001). Fourth, the California action was filed only a few weeks before this case, and most of the plaintiffs' claims survived the California court's ruling on Apple's demurrer last November. Miguel, No. 21-cv-8348, slip op. at 1 (Cal. Super. Ct. Nov. 19, 2021); see also Niagara Mohawk, 673 F.3d at 102 (holding that this factor carries "little weight if there has been limited progress in the state court suit."). The fifth and sixth factors do not favor abstention since the fifth factor carries little weight when state law provides the rule of

decision and the federal plaintiffs are not before the state court.  Accordingly, evaluation of these factors, "with the balance heavily weighted in favor of the exercise of jurisdiction," does not warrant abstention.  Niagara Mohawk, 673 F.3d at 100 (quoting Moses H. Cone, 460 U.S. 1, 16 (1983)).

II.  Personal Jurisdiction

Apple moves to dismiss all claims brought by Tucker and the putative South Carolina class for lack of personal jurisdiction.  Because these claims do not arise out of Apple's contacts with New York, they must be dismissed.

"To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."  Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 81 (2d Cir. 2018).  To make such a showing, the plaintiff must allege sufficient facts to establish that there is a basis for jurisdiction under the law of the forum State, and that "the exercise of personal jurisdiction comports with due process."  Id. at 82.  See also Fed. R. Civ. P. 4(k)(1)(A).

The Due Process Clause requires that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of

fair play and substantial justice." <u>Licci ex rel. Licci v.</u>
<u>Lebanese Canadian Bank, SAL</u>, 732 F.3d 161, 169 (2d Cir. 2013)
(quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316
(1945)).  The minimum contacts analysis can be broken down into
three steps.  <u>U.S. Bank Nat'l Assoc. v. Bank of Am. N.A.</u>, 916
F.3d 143, 150 (2d Cir. 2019) (citation omitted).  "First, the
defendant must have purposefully availed itself of the privilege
of conducting activities within the forum State or have
purposefully directed its conduct into the forum State."  <u>Id.</u>
(citing <u>J. McIntyre Machinery, Ltd. v. Nicastro</u>, 564 U.S. 873,
877 (2011) (plurality opinion)).  "Second, the plaintiff's claim
must arise out of or relate to the defendant's forum conduct."
<u>Id.</u> (citation omitted).  And third, the court must determine
that jurisdiction is "reasonable under the circumstances."  <u>Id.</u>
(citation omitted).

Apple argues that Tucker's claims must be dismissed under
the Due Process Clause because they do not arise out of any of
Apple's contacts with New York.  In <u>Bristol-Myers Squibb Co. v.</u>
<u>Superior Court of California</u>, 137 S. Ct. 1773 (2017), the
Supreme Court held that the "territorial limitations on the
power of the respective States" demands that there be "an
affiliation between the forum and the underlying controversy"

such that the suit can be said to "arise out of or relate to the
defendant's contacts with the forum."  Id. at 1780–81 (citation
omitted).  In claiming specific jurisdiction over a defendant,
plaintiffs residing outside a forum State cannot rely on the
defendant's contacts with plaintiffs residing within the forum
State to establish jurisdiction.  See id.  The Supreme Court
held that nonresident plaintiffs could not assert personal
jurisdiction over the defendant when their claims had nothing to
do with the defendant's forum State contacts.  Id.

The SAC does not assert that the South Carolina claims
arise out of any of Apple's contacts with New York.  Tucker is a
resident of South Carolina, and brought his daughter's iPhone to
be repaired in North Carolina.  None of the SAC's allegations
regarding Tucker or the South Carolina class mention any
contacts with New York.  The plaintiffs have therefore failed to
"identify[] any adequate link between the [forum] State and the
nonresidents' claims."  Id. at 1781.

Instead of alleging a nexus between the South Carolina
claims and Apple's forum state contacts, the plaintiffs argue
that Bristol-Myers does not apply in the context of federal
class actions.  The plaintiffs point to other District Court
decisions which have held that Bristol-Myers does not prevent a

court from exercising jurisdiction over claims brought on behalf
of nonresident class members.  See, e.g. Simon v. Ultimate
Fitness Group, LLC, No. 19-cv-890, 2019 WL 4382204, at *4
(S.D.N.Y. Aug. 19, 2019) (compiling cases).  Many of these cases
are easily distinguished.  In any event, for the reasons given
above, the SAC fails to plead a nexus between Tucker's claims on
behalf of a South Carolina class and the defendant's forum state
contacts.  See U.S. Bank Nat'l Ass'n, 916 F.3d at 150 (citing
Bristol-Myers Squibb Co., 137 S. Ct. at 1783).  All claims
brought by Tucker, including those brought on behalf of the
putative South Carolina class, must be dismissed.

III. Failure to State a Claim

    Apple moves to dismiss each of the plaintiffs' causes of
action for failure to state a claim pursuant to Fed. R. Civ. P.
12(b)(6).  In order to state a claim and survive a motion to
dismiss, "[t]he complaint must plead 'enough facts to state a
claim to relief that is plausible on its face.'"  Green v. Dep't
of Educ. of City of New York, 16 F.4th 1070, 1076–77 (2d Cir.
2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the

13

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). To evaluate the adequacy of a complaint, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." United States ex rel. Foreman v. AECOM, 19 F.4th 85, 106 (2021) (citation omitted).

A. False Advertising and Deceptive Business Practices

New York law prohibits "false advertising" and "deceptive acts or practices in the conduct of any business, trade, or commerce in the furnishing of any service in this state." N.Y. Gen. Bus. Law §§ 349(a), 350. A plaintiff bringing a claim under these statutes must allege "(1) that the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 500 (2d Cir. 2020) (citation omitted). An act is materially misleading if it is "likely to mislead a reasonable

14

consumer acting reasonably under the circumstances."  Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013).  "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  Id.

The SAC identifies several consumer-facing advertisements for the iPhone, a consumer product.  The SAC plausibly alleges that a reasonable consumer would find these advertisements misleading.  The advertisements depict the iPhone being submerged in a variety of liquids at a variety of depths, and make specific claims about the iPhone's water resistance when submerged at certain depths for certain amounts of time.  The SAC alleges, however, that these statements are inaccurate, and that iPhones are often damaged when subjected to the conditions depicted or described in the advertisements.

The SAC fails, however, to plausibly allege an injury from conduct described in the advertisements.  The SAC asserts that Smith's iPhone malfunctioned after "sustained contact with water."  It alleges that Santos's iPhone was damaged after contact with water and other unspecified liquids.  The SAC fails to plead therefore that the plaintiffs' iPhones were damaged by

liquid contact that Apple's advertisements suggested they could withstand.

The plaintiffs argue that they have adequately pleaded damages under the GBL by alleging that they paid a "price premium" due to the defendant's misrepresentations.  <u>See</u> <u>Orlander v. Staples, Inc.</u>, 802 F.3d 289, 302 (2d Cir. 2015) (discussing the "price premium" theory in cases involving "consumable goods").  But a price premium is not itself sufficient to demonstrate an injury under the GBL.  The plaintiffs must still show a "connection between the misrepresentation and any harm from, or failure of, the product."  <u>Small v. Lorillard Tobacco Co., Inc.</u>, 94 N.Y.2d 43, 56 (1999).  The SAC does not allege any such connection. Accordingly, the GBL claims must be dismissed.

    B.   Express Warranty

Apple moves to dismiss the plaintiffs' claims for breach of express warranty.  A claim for breach of express warranty requires breach of a promise concerning the goods that was "part of the basis of the bargain."  N.Y. U.C.C. Law § 2-313; <u>see also</u> <u>Rogath v. Siebenmann</u>, 129 F.3d 261, 264 (2d Cir. 1997).

The SAC points to no warranty provisions that Apple has breached.  It even concedes that "[t]she issue of water damage

is not technically a warranty issue."  Additionally, Apple's warranty expressly disclaims coverage for damage due to "liquid contact."  The plaintiffs having failed to identify any warranty Apple made that its products could resist water damage, and Apple having expressly disclaimed such a warranty, the claim for breach of express warranty must be dismissed.

The plaintiffs argue that the express disclaimer can be ignored since it was not part of the "basis of the bargain." But this argument misunderstands the law, which is that an express warranty must itself be part of the "basis of the bargain" for the plaintiffs to have a claim.  See Rogath, 129 F.3d at 264.

C.   Implied Warranty of Merchantability

Under New York law, a sale of goods by default comes with an implied warranty "that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind." N.Y. U.C.C. § 2-314(1).  The implied warranty of merchantability "does not require that the goods be perfect or that they fulfill a buyer's every expectation; it only requires that the goods sold be of a minimal level of quality."  Corania v. Philip Morris USA, Inc., 715 F.3d 417, 433-34 (2d Cir. 2013) (citation

omitted).  This implied warranty may be disclaimed in writing, however, if done so conspicuously.  <u>See</u> N.Y. U.C.C. § 2-316(2).

Apple has conspicuously disclaimed the implied warranty of merchantability.  Apple specifically disclaims all implied warranties, including the warranty of merchantability, in capital letters in the second paragraph of its iPhone warranty contract.  This "broad, express, and conspicuous disclaimer" is sufficient to exclude the implied warranty of merchantability. <u>West 63 Empire Assocs. LLC v. Walker & Zanger, Inc.</u>, 968 N.Y.S.2d 455, 457 (N.Y. App. Div., 1st Dept. 2013) (a disclaimer "printed in all-capital letters" at the bottom of a sale invoice).

Additionally, even if the implied warranty of merchantability had not been adequately disclaimed, the SAC has not alleged that it was breached.  It does not allege that the plaintiffs' iPhones were incapable of making calls, browsing the internet, running applications, or otherwise performing the "ordinary purposes for which such goods are used." <u>Caronia</u>, 715 F.3d at 433 (quoting N.Y. U.C.C. § 2-314(2)(c).  Its sole complaint is that the iPhone is not sufficiently resistant to water.  Accordingly, the plaintiffs have not plausibly alleged that Apple has violated any implied warranty of merchantability.

D.   Magnuson-Moss Warranty Act

The plaintiffs also bring a claim for violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 et seq. The MMWA prevents sellers of a consumer product from disclaiming warranties implied under state law if the seller also extends an express warranty.  See Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 247 (2d Cir. 1986).  It does not, however, create new substantive warranty obligations, which remain "solely the creation of state law."  Id. at 247.  As explained above, the plaintiffs have not successfully alleged any claim for a breach of an express or implied warranty.  Accordingly, the plaintiffs' MMWA claim must also be dismissed.  See also Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 & n.3 (9th Cir. 2008) (explaining that "claims under the [MMWA] stand or fall with . . . express and implied warranty claims under state law").

E.   Breach of Contract

Apple moves to dismiss the plaintiffs' claim for breach of an implied contract.  "A contract implied in fact may result as an inference from the facts and circumstances of the case . . . and is derived from the presumed intention of the parties as indicated by their conduct."  Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 582 (2d

19

Cir. 2006) (citation omitted).  Implied contract claims,
however, are not available when a written contract governs the
claim.  See Bowne of N.Y., Inc. v. Int'l 800 Telecom Corp., 576
N.Y.S.2d 573, 574 (N.Y. App. Div., 1st Dept. 1991) (explaining
that "the theories of express contract and of contract implied
in fact . . . are mutually exclusive").

The SAC alleges that Apple breached an implied contract to
repair or replace iPhones not resistant to water damage.  It
lacks, however, any allegations of the "facts" or
"circumstances" that might indicate that the parties had agreed
to such a contract.  Cf. Beth Israel Med. Ctr., 448 F.3d at 582.
The conclusory assertion that such a contract existed is not
enough to sustain the plaintiffs' claim.  Additionally, the
SAC's implied contract claim is inconsistent with its
allegations that Apple provided an express warranty.
Accordingly, the breach of contract claim is dismissed.

    F.   Fraud

Apple moves to dismiss the plaintiffs' claims for fraud.  A
party alleging fraud must "state with particularity the
circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  A
fraud claim under New York law consists of five elements: "(1) a
material misrepresentation or omission of a fact, (2) knowledge

of that fact's falsity, (3) an intent to induce reliance, (4)
justifiable reliance by the plaintiff, and (5) damages."
Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797
F.3d 160, 170 (2d Cir. 2015) (citation omitted).  Additionally,
to meet Rule 9(b)'s heightened pleading standard, the complaint
must: (1) detail the events giving rise to the fraud, such as
the statement or omission that is alleged to be fraudulent, the
identity of the speaker, the location of the fraud, and the
reason the statement is fraudulent; and (2) allege facts "that
give rise to a strong inference of fraudulent intent."  Id. at
171; see also Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 359
(2d Cir. 2013).

     The SAC fails to allege fraud with the requisite
particularity.  It alleges generally that the plaintiffs relied
on Apple's marketing statements about the iPhone's water
resistance.  But it does not specify which statements the
plaintiffs viewed or when, and it does not explain in what way
those statements were fraudulent.  See Rombach v. Chang, 355
F.3d 164, 170 (2d Cir. 2004).  Similarly, the SAC contains only
a conclusory assertion that Apple acted with fraudulent intent.
It does not plausibly allege that Apple knew its iPhones were
not as water resistant as advertised, giving "rise to a strong

inference of fraudulent intent."  See Loreley Fin. (Jersey) No.
3 Ltd., 797 F.3d at 170.  The claim for fraud therefore is
dismissed.

  G. Negligent Misrepresentation

  Apple also moves to dismiss the plaintiffs' claim for
negligent misrepresentation.  A plaintiff bringing a claim for
negligent misrepresentation under New York law must plausibly
allege five elements:

> (1) the defendant had a duty, as a result of a special
> relationship, to give correct information; (2) the
> defendant made a false representation that he or she
> should have known was incorrect; (3) the information
> supplied in the representation was known by the
> defendant to be desired by the plaintiff for a serious
> purpose; (4) the plaintiff intended to rely and act
> upon it; and (5) the plaintiff reasonably relied on it
> to his or her detriment.

Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 114
(2d Cir. 2012) (citation omitted).  "[N]ot all representations
made by a seller of goods or provider of services will give rise
to a duty to speak with care."  Kimmell v. Schaefer, 89 N.Y.2d
257, 263 (1996).  Instead, a speaker is only liable if it has
"unique or specialized expertise, or [is] in a special position
of confidence and trust with the injured party such that
reliance on the negligent misrepresentation is justified."  Id.

The Second Circuit has not determined whether claims for negligent misrepresentation are subject to the heightened pleading standard under Fed. R. Civ. P. 9(b).  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 188 (2d Cir. 2004) ("Rule 9(b) may or may not apply to a state law claim for negligent misrepresentation.").  District courts in this circuit, however, have tended to hold that Rule 9(b) does apply.  Id.

The claim for negligent misrepresentation suffers from many of the same defects as the fraud claim.  The SAC does not identify with the requisite particularity which false statements the plaintiffs relied upon or when those statements were made.  Additionally, it fails to allege facts sufficient to demonstrate a special relationship between the plaintiffs and Apple.

The plaintiffs argue that a contract with Apple is sufficient to establish a special relationship.  But this argument misunderstands the law.  Privity of contract (or something similar) is a necessary but not sufficient condition to create a special relationship for the purposes of a negligent misrepresentation claim.  See Anschutz Corp., 690 F.3d at 113 (discussing the New York law requirement for a "special" or "privity-like" relationship).

The SAC also asserts that Apple has a duty to speak with care because of its "special expertise."  It does not explain, however, what this special expertise is or how it is relevant to the plaintiffs' claims.  Claims for negligent misrepresentation typically involve statements by "[p]rofessionals, such as lawyers and engineers, [who] by virtue of their training and expertise, may have special relationships of confidence and trust with their clients."  Kimmell, 89 N.Y.2d at 263.  The plaintiffs do not allege any facts to suggest that they have any such relationship with Apple.  Instead, the purchase of an iPhone falls comfortably within the large category of conventional commercial transactions that do not "give rise to a duty to speak with care."  Id.

H.   Unjust Enrichment

Apple moves to dismiss the claim for unjust enrichment.  To sustain a claim for unjust enrichment, a plaintiff must plausibly allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Myun-Uk Choi v. Tower Research Capital LLC, 890 F.3d 60, 69 (2d Cir. 2018) (citation omitted). "[U]njust enrichment is not a catchall cause of action to be used when others fail."  Corsello v. Verizon N.Y., Inc., 18

24

N.Y.3d 777, 790 (2012).  It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. (citation omitted).

The only allegation in the complaint specific to unjust enrichment simply restates that the iPhone did not match Apple's representations or the plaintiffs' expectations.  The plaintiffs do not explain why their unjust enrichment claim is distinct from their other claims, or distinct from a conventional tort or contract action.  Accordingly, the plaintiffs' unjust enrichment claim must be dismissed.

IV.  Leave to Amend

The plaintiffs request that, in the event their second amended complaint is dismissed, they be granted leave to file a third amended complaint.  In general, leave to amend should be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may be denied, however, "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Eastman Kodak Co. v. Henry Bath LLC, 936 F.3d 86, 98 (2d Cir. 2019) (citation omitted).

Leave to amend is not appropriate here.  The defendant's first motion to dismiss argued that each of the claims in the complaint failed to state a claim.  The FAC included only one

new cause of action for the New York plaintiffs: a claim for breach of an implied contract.  The SAC fails to plausibly plead any claim on behalf of the two New York plaintiffs, and the defects in the claim for breach of an implied contract cannot be cured through amendment.

The FAC also added a second New York plaintiff.  The only claim that could theoretically be amended to survive a renewed motion to dismiss is Santos's claim under the GBL.  Santos's GBL claim, however, suffers from the same defects as Smith's. Santos does not plausibly allege that his iPhone suffered water damage that Apple represented it could survive, and his allegation that his iPhone sustained contact with liquids other than water suggests otherwise.  The plaintiffs were on notice that their complaint suffered from this deficiency.  The plaintiffs were already given an opportunity to amend their complaint after Apple first moved to dismiss it on the ground that, among other things, the complaint failed to allege that Smith's iPhone had been damaged by contact with water that Apple's advertisements suggested it could withstand.  And the plaintiffs have not provided any proposed amendment or explained how any additional amendment would cure this defect.  See TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir.

2014) ("A plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint."). Accordingly, leave to amend is denied.

## Conclusion

Apple's November 5 motion to stay is denied. Apple's November 5 motion to dismiss is granted. The Clerk of Court shall enter judgment for the defendant and close the case.


Dated:     New York, New York
           February 2, 2022

                              _____
                                    DENISE COTE
                              United States District Judge